# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

LEWIS EDWARD HENRY, JR.,

Plaintiff,

-vs-

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

Defendant.

DECISION AND ORDER

15-CV-6181-CJS

## APPEARANCES

For the Plaintiff:                  Howard D. Olinsky, Esq.
                                    Olinsky Law Group
                                    300 South State Street
                                    Suite 420
                                    Syracuse, NY 13202
                                    (315) 701-5780

For the Defendant:                  Sergei Aden, Esq.
                                    Social Security Administration
                                    Office of General Counsel
                                    26 Federal Plaza
                                    Room 3904
                                    New York, NY 10278
                                    (212) 264-3650

                                    Grace M. Carducci, A.U.S.A. (*oral argument*)
                                    Kathryn L. Smith, A.U.S.A. (*oral argument*)
                                    Office of the United States Attorney
                                    for the Western District of New York
                                    100 State Street, Sixth Floor
                                    Rochester, New York 14614
                                    (585) 263-6760

## INTRODUCTION

**Siragusa, J.** This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Lewis Henry, Jr. ("Plaintiff") for Social Security Disability Insurance ("SSDI"). Now before the Court is Plaintiff's motion for judgment on the pleadings, Nov. 30, 2015, ECF No. 8, and Defendant's cross-motion for judgment on the pleadings, Jan. 28, 2016, ECF No. 11. Having considered the issues raised in the papers, and at oral argument, Defendant's cross-motion for judgment on the pleadings is denied and Plaintiff's motion for judgment on the pleadings is granted, the Commissioner's decision is reversed and remanded for a new hearing pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

Having an onset date of disability of August 10, 2010, Plaintiff filed a claim on October 26, 2011, for Social Security Disability benefits. Upon denial, Plaintiff requested and received a hearing on June 12, 2013 before an Administrative Law Judge ("ALJ"). The ALJ on June 28, 2013, ruled that Plaintiff was not disabled.

In that regard, the ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform light work with certain exceptions. Based on the testimony of a vocational expert ("VC"), the ALJ found that although Plaintiff could not perform his past relevant work, he could perform other jobs existing in significant numbers in the national economy, such as a counter clerk and mail clerk. This determination ultimately became the Commissioner's final judgement on January 27, 2015, when the Appeals Council denied review.

**MEDICAL EVIDENCE**

James L. Peacock, M.D., a surgeon, examined Plaintiff on February 10, 2011, at the request of Plaintiff's treating physician, Jeffrey Hanson, M.D. With regard to Plaintiff's complaint of left groin pain, Dr. Peacock determined that he had no inguinal hernia and concluded that his symptoms were related to "excess skin and fatty tissue hanging in the pubic region." R. 277. He recommended Plaintiff have a consultation with the Life After Weight Loss Program and noted "I have put [Plaintiff] in contact with Dr. Jeffrey Gusenoff in this regard." R. 277. Dr. Peacock also copied his report to David A. Krusch, M.D.

In a report dated February 14, 2011, Baker Mitchell, M.D., at the University of Rochester Pain Treatment Center, examined Plaintiff after he had been referred by Dr. Hanson. Dr. Mitchell wrote that Plaintiff,

> underwent an open gastric bypass in 2001, he subsequently lost weight from approximately 450 pounds and he now averages between 250 and 260 pounds. He then underwent a ventral hernia repair in 2004. Then in 2008, [Plaintiff] was working as a security guard, and during an altercation with a patient he noticed afterwards he had a[n] upper midline incisional hernia. It subsequently worsened and [he] finally had a ventral hernia repair with mesh in August of 2010.

> Since his last surgery in August, the patient has had pain in his left lower abdominal quadrant. He states that the pain begins in around his umbilicus, and radiates laterally. Overall his main area of pain is about the size of his two hands when he places them over his left lower quadrant. He states that prior to the surgery he did not have any pain such as this. He has no pain over his incision, he states that the pain is not superficial[;] he has no allodynia or skin sensitivity. He states it does not feel like gas pain or a testicle pain. He does describe the pain as throbbing, burning, stabbing, cutting and hot. Almost any type of activity especially coughing sneezing bending standing or carrying objects makes his pain worse. He states the only position that can be in where the pain is significantly decreased his laying [sic] flat on his back. He states his pain varies between a/10 [sic] and 10/10. The patient has tried multiple types of abdominal binders, these provided some modest benefit initially, however he feels they are no longer working for

him. The pain does not seem to be related to food, although he does state
that if he needs to strain during a bowel movement it will worsen the pain.

R. 328.

On February 24, 2011, Plaintiff was seen by David A. Krusch, M.D., who noted
that Dr. Peacock had referred Plaintiff to see Dr. Jeff Gusenoff, a plastic surgeon. R. 296,
319. Dr. Krusch treated Plaintiff for pain. R. 296, 319.

On June 13, 2011, Plaintiff was seen at the Pain Management Center by Dr.
Mitchell, who stated that Plaintiff "denies any constipation, sedation, nausea [or] itching"
as a result of his medication. R. 315. Plaintiff reported to Dr. Baker that "[o]verall, he feels
that his medications improve his pain, but he still has pain, and on day [sic] he is particu-
larly active, he has quite debilitating pain." R. 315. Dr. Baker also noted in the same re-
port that Plaintiff "has been able to increase his functionality, but he still has some days
with significant pain." R. 315.

However, in an August 10, 2011, report from Dr. Mitchell, Plaintiff reported that he
experienced "some increased sedation and sleepiness after he started Lyrica." R. 336.
Plaintiff reported the same sedative effect to Annie Philip, M.D., at the University of
Rochester Pain Treatment Center, when he was seen by her on December 23, 2011. R.
340.

Plaintiff's pain has been treated with medications. R. 24, 44, 373. The ALJ found
that his medication makes him drowsy. R. 23.

Treating physician Jeffrey Hanson, M.D., noted in a report dated August 24, 2011,
that Plaintiff, on January 13, 2002, at Mt. Morris Ambulance, was lifting a stretcher when

he slipped on the ice and injured his left groin. R. 313. The report further indicates that Plaintiff's disability status was "Total disability," citing the initial injury. R. 313.

Dr. Hanson also wrote "Yes" when answering "Is patient disabled from regular duties?" and stated the "% temporary impairment" to be "100." R. 314. Nevertheless, he identified that Plaintiff was able to complete any type of work in the capacity of "sedentary." R. 314.

In a report dated October 7, 2011, Tarun Subrahmanian, M.D., a Resident, and Annie Philip, M.D., both of the University of Rochester Pain Management Center, wrote that they had examined Plaintiff, "a 39-year-old white male with a history of chronic lower abdominal pain secondary to abdominal injury and multiple elbow surgeries." R. 312. The report contains the results of their examination:

> Mr. Henry is well-developed, well-nourished, obese, in no apparent distress. His gait is normal, posture is upright, heel-to-toe walk is normal, and sit to stand is normal. He has full range of motion of all extremities as well as cervical lumbar spine. He is 5 out of 5 strength In all extremities abdomen tenderness to palpation in his limbs or joints. He does have some mild lower abdominal tenderness to palpation bilaterally.

R. 312.

Sandra Boehlert, M.D., performed a consultative examination of Plaintiff on December 29, 2011. R. 373–76. In her report, Dr. Boehlert elicited from Plaintiff that "he cannot bend and twist. . . ." R. 373. She found that he could "walk on heels and toes without difficulty. Squat full. Stance normal. Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty." R. 374. She gave her opinion that Plaintiff had only a "moderate limitation in repetitive heavy lifting, repetitive squatting, or repetitive use of stairs." R. 376.

In contrast to his determination of total disability in the August 24, 2011, report, Dr. Hanson completed an RFC statement on August 7, 2012, entitled Medical Source Statement of Ability to Do Work-Related Activities (Physical). R. 386–92. In that report, he specified that Plaintiff could lift and carry up to 20 pounds occasionally; sit stand and walk for one hour without interruption; sit, stand and walk for up to four hours in an eight hour workday; could sit for one hour without interruption; would need to stand and walk one to five feet between periods of sitting for more than 15–20 minutes; had continuous use of his hands and feet; could occasionally climb stairs or ramps; could occasionally balance; could not climb ladders or scaffolds, stoop, kneel, crouch, or crawl; had no hearing or vision impairments; could never tolerate exposure to unprotected heights; and could continuously tolerate moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes, extreme temperatures and vibrations.

Dr. Hanson checked "Yes" on the question, "does Pain prevent the Individual from performing his/her past relevant work." He also indicated that pain medications interfered with Plaintiff's concentration, persistence, or pace, but that Plaintiff did not suffer from "good" or "bad" days, and that pain would not cause significant interference with social relationships at work. R. 392. Dr. Hanson denoted that pain would likely cause Plaintiff to miss at least two full days of work per month. Also in the RFC report, Dr. Hanson checked the statement, "An objective source has been identified which can medically and reasonably explain the Individual's pain," but failed to answer the two questions just beneath that statement, "The source of the individual's pain is as follows:" and "The diagnostic technique used to determine the source was:". R. 386–92.

## STANDARDS OF LAW

The pertinent statute states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (citations omitted). Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in your case record, we will give it controlling
weight.

20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(c)(2). However, "[w]hen other substan-

tial evidence in the record conflicts with the treating physician's opinion . . . that opinion

will not be deemed controlling. And the less consistent that opinion is with the record as a

whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.

1999)(*citing* 20 C.F.R. § 404.1527(c)(4), formerly designated as 20 C.F.R.

§ 404.1527(d)(4)). Nevertheless,

> [a]n ALJ who refuses to accord controlling weight to the medical opinion of
> a treating physician must consider various 'factors' to determine how much
> weight to give to the opinion. 20 C.F.R. § 404.1527[(c)](2). Among those
> factors are: (i) the frequency of examination and the length, nature and ex-
> tent of the treatment relationship; (ii) the evidence in support of the treating
> physician's opinion; (iii) the consistency of the opinion with the record as a
> whole; (iv) whether the opinion is from a specialist; and (v) other factors
> brought to the Social Security Administration's attention that tend to support
> or contradict the opinion. *Id.* The regulations also specify that the Commis-
> sioner 'will always give good reasons in [her] notice of determination or de-
> cision for the weight [she] give[s] [claimant's] treating source's opinion.' *Id.*;
> *accord* 20 C.F.R. § 416.927[(c)](2); *see also Schaal*, 134 F.3d at 503-504
> (stating that the Commissioner must provide a claimant with "good reasons"
> for the lack of weight attributed to a treating physician's opinion).

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ, though, is not required to

explicitly discuss each factor, as long as her "reasoning and adherence to the regulation

are clear." *Atwater v. Astrue*, 512 Fed. App'x 67, 70, 2013 WL 628072 at *2 (2d Cir. Feb.

21, 2013) ("Atwater challenges the ALJ's failure to review explicitly each factor provided

in 20 C.F.R. § 404.1527(c). We require no such slavish recitation of each and every fac-

tor where the ALJ's reasoning and adherence to the regulation are clear.") (citation omit-

ted).

**DISCUSSION**

Plaintiff maintains that the Commissioner's ruling must be reversed for the follow-

ing reasons:

> 1. The ALJ did not properly weigh the medical opinion evidence and there-
> by failed to support the residual functional capacity determination with sub-
> stantial evidence.
>
> 2. The Step 5 determination is unsupported by substantial evidence due to
> errors at previous steps of the sequential evaluation process.

Pl.'s Mem. of Law 1, Nov. 30, 2015, ECF No. 9.

> Plaintiff testified at the hearing before the ALJ on June 12, 2013, that,
>
> [t]he medication that I do take right now does help relieve [the abdominal
> pain] but the more physical activity I do it does—it makes the severity of the
> pain more. And, you know, I'm doing a part-time job right now and I'm
> struggling to do that and I don't even know how much longer I'm even going
> to be able to do that.

R. 62. Plaintiff was asked the following question by his counsel and gave the following

response:

> Q. Is it your abdominal pain that's preventing you from working more hours?
>
> A. Yes. My abdomen, the more I do physically in that—with that area and it
> could be as simple as having to bend over four or five times, that puts a lot
> of strain on my abdomen.

R. 80.

Nonetheless, from  Dr. Hanson's August 7, 2012 RFC report, the ALJ concluded

that Plaintiff could perform "a reduced range of light work with limitations on sitting, stand-

ing, walking, and performing postural activities." R. 26. In analyzing Dr. Hanson's report,

the ALJ noted the following internal inconsistencies:

> The opinion provides limitations that are hard to reconcile. For example,
> while Dr. Hanson opined that the claimant could never stoop or crouch, he
> also indicated the claimant was able to shop, travel alone, make a simple

meal, care for his personal hygiene and use public transportation (Exhibit 12F, page 8). It is difficult to understand how both aspects of the opinion can be accurate; it would be difficult to engage in these activities or many of the activities that the claimant acknowledges performing without any bend-ing. I give Dr. Hanson's opinions only some weight because they are inter-nally inconsistent, and inconsistent with the record. Nevertheless, many as-pects of the exertional limitations indicated have been incorporated into the claimant's residual functional capacity.

R. 26.

Plaintiff argues that simply because he is able to engage in the activities of daily living, he is not thereby able to work on a sustained basis. He cites to *Walterich v. Astrue*, 578 F. Supp. 2d 482, 516 (W.D.N.Y. Aug. 27, 2008). There, the Court wrote, "eligibility for disability benefits is not contingent on a claimant being rendered completely incapacitat-ed." *Id.* The ALJ's assessment that that Dr. Hanson's strict restrictions on Plaintiff's phys-ical ability to stoop, or crouch, was overbroad, was evidently based on the ALJ's experi-ence as well as a consultative examiner's medical report. To state that Plaintiff could *never* stoop or crouch is inconsistent with his ability to shop, travel alone, make a simple meal, care for his personal hygiene, travel, and use public transportation. Even to make a meal, one would likely need to stoop[1] or crouch to reach an ingredient, or a pan, or into the oven. The ALJ's opinion about the doctor's inconsistency does not mean that she ex-pected Plaintiff to be an invalid in order to qualify for disability benefits, but, instead, it ex-plained her reasoning for not giving full, conclusive weight to the Dr. Hanson's overbroad RFC opinion.

---

[1] The ALJ used the synonymous term "bend." The word "stoop" is defined as "to bend down or over." Merriam-Webster Online Dictionary "stoop" (2016), http://www.merriam-webster.com/dictionary/stoop.

The next argument Plaintiff makes about the ALJ's assessment of Dr. Hanson's RFC opinion is that stooping in one's activities of daily living does not bear an indication of one's ability to stoop during the working day. Plaintiff cites to Social Security Ruling ("SSR") 96-9p, POLICY INTERPRETATION RULING TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK—IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, which states in pertinent part as follows:

> An ability to stoop occasionally; *i.e.*, from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

A similar overbroad physical restriction was at issue in *Sayles v. Colvin*, No. 13cv6129-RJS-FM, 2014 U.S. Dist. LEXIS 126755, *50 (S.D.N.Y. Aug. 28, 2014). There the district court wrote:

> Sayles' treating physicians opined that he could "never" stoop. (Tr. 438). This opinion is consistent with record evidence that Sayles used a cane for balance, "defer[red] to walk on [his] heels and toes [and] to squat" during his consultative examination, and had decreased strength and range of motion in his knee. (*See, e.g., id.* at 274, 436, 478).

In Plaintiff's case, however, Dr. Hanson specifically indicated that Plaintiff did not use a cane, nor did he need one to ambulate, nor was one medically necessary. R. 387.

As the Second Circuit noted in *Mongeur v. Heckler*, 722 F.2d 1033 (2d Cir. 1983):

> It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, *Parker v. Harris*, 626 F.2d 225, and the report of a consultative physician may constitute such evi-

dence. *Miles v. Harris*, 645 F.2d at 124; *Perez v. Secretary of HEW*, 622 F.2d 1 (1st Cir. 1980).

*Mongeur*, 722 F.2d at 1039. In *Crayton v. Astrue*, 944 F. Supp. 2d 231 (W.D.N.Y. 2013), the Honorable David G. Larimer of this Court wrote the following on the subject of rejecting a treating physician's opinion:

> The ALJ rejected Dr. Beecher's opinion on the grounds that it was unsupported by medical evidence in the record, and was inconsistent with the opinions of other treating and examining physicians, and plaintiff's own reports of her physical activities. (T. 77). For example, Dr. Beecher opined that plaintiff could "never" twist, stoop, crouch, squat, climb ladders, grasp, turn or twist objects with her hands — but simultaneously opined that plaintiff could perform fine manipulation with her fingers for 50% of a full workday. (T. 369). A report by examining physician Karl Eurenius on August 26, 2009 noted that plaintiff had normal gait, normal stance, could perform a full squat, has full spinal flexion, extension and rotary movement, full lateral flexion and rotation in the low back, full range of movement in her hips, knees, ankles, strength of 5/5 in her upper and lower extremities, and intact hand and finger dexterity and 5/5 grip strength, despite tenderness in both wrists. (T. 273). Plaintiff's self-reported activities of daily living, including reading books, dressing herself and attending to personal hygiene, loading and unloading laundry from the washer and dryer, grocery shopping and performing light housework, also conflict with Dr. Beecher's opinion that plaintiff can "never" stoop, crouch, squat, or handle items with her hands. (T. 49-52). Finally, there are no objective medical tests or reports supporting the level of postural and manual disability contained in Dr. Beecher's report, and Dr. Beecher did not adjust or increase plaintiff's prescribed back pain medication, or even deem it appropriate to order any testing, imaging studies or x-rays of her back, knees or wrists. (T. 29, 74).
>
> Balancing these factors, I find that the ALJ's rejection of Dr. Beecher's opinion concerning plaintiff's exertional limitations was proper.

*Crayton*, 944 F. Supp. 2d at 234–35; *compare Goff v. Astrue*, 993 F. Supp. 2d 114, 122 (N.D.N.Y. 2012) ("The ALJ dismissed Dr. LoDolce's opinion [that Plaintiff could never climb, balance, stoop, crouch, kneel or crawl] with a single sentence, in which the ALJ indicated that the treating physician's opinion was '"contradicted by the remainder of the medical record.' (T at 23). The ALJ's statement is factually inaccurate and his analysis is

legally inadequate.").

As was the case in *Crayton*, Dr. Hanson's "never" assessment regarding squatting and stooping was overbroad and inconsistent with Plaintiff's own testimony about his activities, as well as the consultative medical examination. Nevertheless, Plaintiff argues that the ALJ failed to consider the factors in 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)—(6). As the Second Circuit observed in *Greek v. Colvin*, 802 F.3d 370 (2d Cir. 2015), a case relied upon by Plaintiff:

> "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selina v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*per curiam*). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (alteration in original) (quoting *Halloran*, 362 F.3d at 33). The failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 129-30 (*quoting Snell*, 177 F.3d at 133). The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id.* at 131.

*Greek*, 802 F.3d at 375. Plaintiff argues that Dr. Hanson had a lengthy treatment history with Plaintiff and knew him better than any other medical provided whose opinions are included in the Record. Dr. Mitchell, who also saw Plaintiff more than once, wrote after a February 14, 2011, physical examination that he "likely has a combination of mechanical pain, with some neuropathic component, given that his pain has been going on for this long." R. 321.

Here, the Court determines that the ALJ properly considered the requirements of the regulation and the ruling in assessing Dr. Hanson's RFC determination that Plaintiff

could "never" stoop or squat. The ALJ's decision that Dr. Hanson's RFC restriction on stooping or squatting was too restrictive is supported by substantial evidence in the record and the ALJ complied with the requirement to give "good reason" for her partial rejection of Dr. Hanson's medical opinion regarding Plaintiff's ability to squat or stoop.

### Step 5 Determination

Plaintiff's argument against the ALJ's step five determination rests in part on the premise that the ALJ improperly assessed Plaintiff's residual functional capacity. Further, Plaintiff cites to the ALJ's failure to include Dr. Hanson's limitations in her questioning of the vocational expert ("VE"). He lists the following limitations as ones the ALJ failed to include in her questioning of the VE: (1) that Plaintiff would miss two or more days of work per month; and (2) that Plaintiff would be off task 20% of the time.

Turning back to Dr. Hanson's RFC, he checked a box stating that "Pain will negatively impact productivity by greater than 20-25% (on a 'bad day')—Pain is 'Disabling,' at least on the bad days. R. 392. On the same page of the RFC form, however, he also checked "No" to the question, "Does the Individual experience 'Good Days and Bad Days' due to pain?" *Id*. Finally, also on that page, Dr. Hanson checked "Yes" to the question, "Would pain likely cause the Individual to miss work at least 2 full days per month?" R. 392. At the hearing, Plaintiff testified, *inter alia*, that he "might be able to make an eight-hour day but I can guarantee you that I'm probably going to miss the next day or two or I'm going to be running—I'm going to be late for work. And a full-time position, they're just not going to accept that." R. 81.

When questioning the VE, the ALJ expressed the following physical limitations: occasionally stoop, balance, climb stairs, and crawl; requires a sit/stand option, changing

position every 60 minutes for up to five minutes; requires up to three additional short breaks, unscheduled, each less than five minutes, away from the workstation; and can meet daily goals but not an hourly production rate. R. 89. With those limitations, the VE testified that Plaintiff could perform his past work as a shipping checker (as described by the DOT), and school child care attendant (as performed). The ALJ added additional limitations to her hypothetical: only occasional crouching and kneeling, standing, walking and sitting to four hours each, maximum, and limited to unskilled work. R. 90. The VE testified Plaintiff could perform his past work in child care as he previously performed it. *Id.* In addition, the VE testified that he could perform a counter clerk position (unskilled, light exertional level) and mail clerk (unskilled, light exertional level). Then the ALJ added the restriction of "an individual [] likely to be absent from work more than two times per month. . . ." R. 91. The VE responded that such an individual "would most likely not be able to maintain employment." R. 92. Finally, the ALJ asked whether an individual, whose combined impairments took him off task "such that [he fell] below the full-time expectations by percent in the typical work week" would be able "to maintain employment." The VE responded that such an individual "would not be able to maintain full-time competitive employment status. . . ." R. 92. During questioning of the VE by Plaintiff's counsel, the VE testified that an individual who had to leave his work station for between 15 and 20 minutes could not be accommodated. R. 95.

In assessing the evidence, the ALJ carefully explained why she was rejecting Dr. Hanson's opinion that Plaintiff could not ever squat or stoop; however, she did not discussed why she rejected Dr. Hanson's opinion that Plaintiff would need 15 to 20 minutes of standing or walking in between periods of sitting, R. 388, or that pain would likely

cause Plaintiff to miss at least two full days per month, R. 392. With regard to the ALJ's pain assessment, she concluded: "Finally, the claimant's pain appears fairly well controlled on a stable dose of Lyrica, although it does cause some fatigue. The claimant has exhibited a reasonably positive response to treatment and has maintained stable conservative care." R. 26.

Because the ALJ has not given a good reason for her apparent rejection of Dr. Hanson's opinion that Plaintiff's pain would cause him to miss two full days of work per month, her decision fails in this respect to comply with 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Consequently, the Commissioner's decision must be reversed, and the case remanded pursuant to the fourth sentence of 42 U.S.C. 405(g) for reconsideration in light of the Court's decision.

## CONCLUSION

Defendant's motion for judgment on the pleadings is denied; Plaintiff's motion for judgment on the pleadings is granted, the Commissioner's decision is reversed and remanded for a rehearing. The Clerk is directed to close this case.

So Ordered.

Dated:   June 10, 2016
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge